IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 03-cv-00557-PSF-OES

RUSSELL M. BOLES,

Plaintiff,

v.

GARY D. NEET,

Defendant.

---

## ORDER and RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

**Entered by U.S. Magistrate Judge O. Edward Schlatter.**

This matter is before me on defendant's Motion For Summary Judgment and defendant's Motion to Dismiss Plaintiff's Religious Land Use and Institutionalized Persons Act Claims.  Also before me are plaintiff's request for leave to submit an argument in support of a damage award, Motion To Uphold Plaintiff's Religious Land Use And Institutionalized Persons Claim, and a request for extension of time.

This case has been referred to me under a general Order of Reference, pursuant to 28 U.S.C. § 636(b)(1)(A)&(B) and Fed.R.Civ.P. 72(a)&(b), to include rulings on nondispositive motions and recommendations on dispositive motions.  The parties' rights to seek review or reconsideration of the Recommendation portion of this document, by filing objections within ten days, are attached hereto, and are entitled "Advisement Under Fed. R. Civ. P. 72."

## BACKGROUND

By Order On Pending Motions, filed August 20, 2004, the Honorable Phillip S. Figa ruled that plaintiff proceeds in this case under the second claim of his Amended

Complaint, filed on November 3, 2003, alleging violations of the First Amendment and the Religious Land Use And Institutionalized Persons Act ("RLUIPA"), and limited plaintiff's possible recovery of damages to nominal and punitive damages. See Docket #76. Subsequently, defendant filed his Motion For Summary Judgment, arguing that plaintiff's claims are barred by the statute of limitations, that plaintiff's claim for damages under RLUIPA fails, that defendant is entitled to qualified immunity, and that plaintiff's claims for nominal and punitive damages fail. At the same time, defendant filed a Motion To Dismiss, contending that RLUPIA is unconstitutional.

Plaintiff has strenuously objected to the defendant's summary judgment motion, see Dockets #121 and #122, and has filed a motion to uphold his rights under RLUIPA, see Docket #126, in response to the defendant's Motion To Dismiss. Additionally, plaintiff has requested leave of court to submit additional briefing on the issue of damages. In his tendered brief, plaintiff argues that he gave notice to the defendant that the issues of liability and damages would be presented separately in this action, and that he is entitled to seek not only nominal and punitive damages, but also equitable and declaratory relief. Defendant opposes the plaintiff's position in this regard.

On June 14, 2005, the United States of America was allowed to intervene in this matter, and file a brief in defense of the constitutionality of RLUIPA. See Dockets #148 and #149. No response to the briefing of the United States in this regard has been filed by the defendant.

## DISCUSSION

### I.   Defendant's Motion For Summary Judgment.

#### A.   Standard of Review.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Jenkins v. Wood, 81 F.3d 988, 990 (10th Cir. 1996) (*quoting* Fed.R.Civ.P. 56©).  The court views the evidence in the light most favorable to the party opposing summary judgment.  Jenkins, 81 F.3d at 990.

The party moving for summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the nonmoving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party to establish the existence of an essential element of the claims on which they bear the burden of proof at trial.  Id.  "While the movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the nonmovant's claim."  Jenkins, 81 F.3d at 990.

To satisfy his or her burden, the nonmoving party must go beyond the pleadings and designate specific facts to make a showing that there is a genuine issue for trial. Ford v. West, 222 F.3d 767, 774 (10th Cir. 2000) (*quoting* McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998)).  In order to successfully resist summary judgment, there must be sufficient evidence on which a jury could reasonably find for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).  "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant."  Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997). The court must consider the record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion.  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).

Because the plaintiff is proceeding without counsel, the court must construe his pleadings and other filings liberally.  See Haines v. Kerner, 404 U.S. 519, 520-21

3

(1972); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the court should not be the *pro se* litigant's advocate.  Hall, 935 F.2d at 1110.

**B.    Statute of Limitations.**

Defendant argues that plaintiff's claims accrued on March 6, 2001, when he filed his informal resolution attempt with the prison concerning the denial of medical transport to him while he was wearing religious clothing.  Because the applicable statute of limitations in this regard is two years, Blake v. Dickason, 997 F.2d 749, 750-51 (10th Cir. 1993), and plaintiff did not sign his original Complaint until March 11, 2003, defendant contends that plaintiff's claim of a violation of his First Amendment rights under 42 U.S.C. § 1983 is time barred.

Plaintiff's Amended Complaint alleges that "[t]ime passed while written objections and grievances were submitted.  Plaintiff met with Associate Warden, Mr. Estep reported to Warden Neet.  Neet gave his authorization to continue discrimination against the religious requirements mentioned . . . ."  AMENDED COMPLAINT, Docket #77, p. 3b.  The Order On Pending Motions found that ". . . plaintiff has alleged not only that his rights were violated in March 2001, but also over a period of time some eighteen months when he was being denied transport while insisting that he be permitted to wear his religious garb.  At a minimum, the documentary evidence of record shows that as of April 30, 2001, defendant was still engaging plaintiff in an exchange over whether his right to be transported wearing his religious garb would be recognized."  See Docket #76, pp. 8-9.

The Court of Appeals for the Tenth Circuit has never specifically held that the continuing violation doctrine applies to claims brought pursuant to § 1983.  See Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994).  However, the Supreme Court has ruled that when borrowing state limitations periods under § 1983, a court must also borrow a state's "'provisions regarding tolling, revival, and questions of application.'"  Wilson v.

4

Garcia, 471 U.S. 261, 269 n.17 (1985) *superseded by statute on other grounds* see
Colo.Rev.Stat. §13-80-102(1)(g).  While the Colorado Supreme Court has not applied
the doctrine to toll statutes of limitations, this court has determined that "the Colorado
courts likely would apply the continuing violations doctrine" in a case where there is an
alleged pattern of violation.  See Fry v. Airline Pilots Ass'n, 1994 WL 761045 (D.Colo.
1994) (adopting Report and Recommendation), *vacated in part on other grounds by* Fry
v. Airline Pilots Ass'n, Intern., 88 F.3d 831 (10th Cir. 1996).  Liberally construed,
plaintiff's allegations are viewed as an invocation of the continuing violations doctrine.

"A continuing violation is occasioned by continual unlawful acts, not continual ill
effects from an original violation."  National Advertising Co. v. City of Raleigh, 947 F.2d
1158, 1166 (4th Cir. 1991) (*quoting* Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981)).
"To establish a continuing violation . . . the plaintiff must establish that the
unconstitutional or illegal act was a . . . fixed and continuing practice."  National
Advertising Co., 947 F.2d at 1166-67 (*quoting* Perez v. Laredo Junion College, 706
F.2d 731, 733 (5th Cir. 1983)).   In this case, the plaintiff has not just focused on the
defendant's initial actions, he has challenged the continued application of an allegedly
unlawful policy during the time in question.  Due to the continuing nature of the alleged
harm, the defendant's motion requesting dismissal based on the statute of limitations
bar should be denied.

## C.    Plaintiff's Claim For Damages Under RLUIPA.

RLUIPA was created by Congress to conform to the Supreme Court's decisions
in Employment Division v. Smith, 494 U.S. 872 (1990), holding that laws of general
applicability that incidentally burden religious conduct do not offend the First
Amendment, but inviting greater legislative protection to religious exercise, and City of
Boerne v. Flores, 521 U.S. 507 (1997), which invalidated the Religious Freedom

Restoration Act ("RFRA") as it applied to states and localities.  See Madison v. Riter, 355 F.3d 310, 314-15 (4th Cir. 2003).

The Supreme Court has characterized RLUIPA "[a]s the latest of long running congressional efforts to accord religious exercise heightened protection from government imposed burdens . . . ." Cutter v. Wilkinson, 125 S.Ct. 2113, 2117 (2005). The Court noted that Congress sought to provide inmates a mechanism to seek redress against the "'frivolous or arbitrary' barriers [that] impeded institutionalized persons' religious exercise," id. at 2119, by replacing the "legitimate penological interest" standard articulated in Turner v. Safely, 482 U.S. 78, 89 (1987), with the "compelling government interest" and "least restrictive means" test codified at 42 U.S.C. § 2000cc-1(a).  See Cutter, 125 S.Ct. at 2119.  RLUIPA sets forth a "substantial burden provision, which requires land-use regulations that substantially burdens religious exercise to be the least restrictive means of advancing a compelling government interest, see 42 U.S.C. § 2000cc(a), as well as [a] nondiscrimination provision, which prohibits land-use regulations that either disfavor religious uses relative to nonreligious uses or unreasonably exclude religious uses from a particular jurisdiction, see 42 U.S. C. § 2000cc(b)."  Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 759-60 (7th Cir. 2003).

However, RLUIPA affords the government discretion to take corrective action to eliminate violation of its provisions, whether or not the alleged violation was the result of a substantial burden on religious exercise.  Id. at 762 (citing 42 U.S.C. § 42 U.S.C. § 2000cc-3(e)).  In this case, the record demonstrates that the CDOC changed its policy to allow Jewish inmates to wear their Yarmulke and Tallit Katan during transport.  See Docket #100, Exh. G, AR 800-01, IV(M)(5).  Plaintiff argues that this is not good enough, because there is no guarantee that the change is permanent or will not be violated.  This argument raises issues which are beyond the scope of this lawsuit and

6

the jurisdiction of this court which is confined to live cases or controversies.

By removing any potential substantial burden in this regard, the threat of heightened scrutiny under RLUIPA has been avoided and its provisions are inapplicable to the present matter by its own terms.  Accordingly, defendant's request for summary judgment in this regard should be granted, and plaintiff's Motion To Uphold Plaintiff's RLUIPA Claim denied.

   **D.    Qualified Immunity.**

Defendant again argues that he is entitled to qualified immunity with regard to the plaintiff's First Amendment violation claim.  Defendant raised this argument in his previously filed Motion To Dismiss.  <u>See</u> Dockets #27 and #28.

In determining whether a government actor is entitled to qualified immunity, courts generally undertake a two-prong analysis.  First, the court determines whether the facts as alleged, viewed in the light most favorable to the plaintiff, establish a constitutional violation at all.  <u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  If no constitutional violation is established, then the defendant prevails.  <u>Id</u>.  If a constitutional right would have been violated under the plaintiff's version of the facts, however, then the court must determine whether that right was clearly established.  <u>Id</u>.  In other words, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  <u>Id</u>. at 202.

In his present motion, defendant does not take issue with the first prong of the qualified immunity test.  Under the defendant's previously filed Motion To Dismiss, he had challenged plaintiff's allegations of a constitutional violation by countering that the high security environment in a prison, together with the risks to staff, other inmates and the public when transporting inmates, was a legitimate penological interest which justified a restriction on plaintiff's exercise of his religion in the wearing of his religious garments while being transported.  The court, however, found that the plaintiff had

sufficiently pled a constitutional violation of his First Amendment rights under his allegations that defendant had placed an unreasonable burden on him that diminished his religious practice sufficient to avoid dismissal under the defendant's motion. Defendant has apparently decided not to follow-up on this issue on summary judgment, since no such direct argument or evidence in this regard is presented in the current motion before the court.

Defendant does argue that the First Amendment right championed by the plaintiff in this case was not clearly established because "[t]here is no clearly established law in this circuit with respect to a Jewish inmate's right to wear religious items during transport, or at any time for that matter." Docket #100, p. 14. However, the Supreme Court has clarified that the fact pattern of prior cases used to show that a right is clearly established need not be "fundamentally similar" or even "materially similar" to the facts alleged. See Hope v. Pelzer, 536 U.S. 730, 2516 (2002). Rather, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Id. The heart of the inquiry is whether "the state of the law [at the time of the alleged violation]" gave officials "fair warning that their [acts were] unconstitutional." Id.

In keeping with Supreme Court and Tenth Circuit case law, this court determined that "[w]hile a defendant charged with a constitutional violation receives qualified immunity when the right asserted is not clearly established, the right that has been established does not have to [be] so fact specific that it is identical to what is alleged in the case at issue, as defendant appears to argue here. . . . To unreasonably limit plaintiff's free exercise of religion is a violation. The limitation of that right does not have to completely prevent a plaintiff from exercising his religious rights. . . . " ORDER ON PENDING MOTIONS, Docket #76, p. 6. The law of the case doctrine would preclude re-litigation of this same issue so that the defendant may once again seek to narrow the

focus of this inquiry for qualified immunity purposes.

The Tenth Circuit has held that the law of the case doctrine means that "findings made at one point during litigation become the law of the case for subsequent stages of that same litigation." United States v. Webb, 98 F.3d 585, 586 (10th Cir. 1996). "The law of the case 'doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" United States v. Monsisvais, 946 F.2d 114, 115 (10th Cir. 1991) (quoting Arizona v. California, 460 U.S. 605 (1983)). Departure from the law of a case can occur, but generally is considered in three narrow instances: (1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice. See United States v. LaHue, 261 F.3d 993, 1011 (10th Cir. 2001). Defendant has presented no basis for this court to consider a departure from its previous ruling. In light of the general rule of practice, defendant has failed to demonstrate how this court's previous ruling is moot or inapplicable to the remainder of this litigation.

Defendant also argues that plaintiff has demonstrated no evidence that this defendant knew or should have known he was allegedly violating plaintiff's constitutional rights, or that he acted with malicious intent. See Docket #100, p. 15. In Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), the Supreme Court overruled prior precedent which had held that qualified immunity had both objective and subjective requirements. The Supreme Court had previously held that qualified immunity could be defeated if an official "knew or reasonably should have known that the action he took within his sphere of his official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . . ." Harlow v. Fitzgerald, 457 U.S. at 815

9

(emphasis in original), *citing* Wood v. Strickland, 420 U.S. 308, 322 (1975).  The Court concluded, however, that this two-pronged test was incompatible with the purpose behind qualified immunity, that "insubstantial claims should not proceed to trial," since inquiry into an official's motive for certain conduct was a factual issue that required resolution by a jury.  Harlow, 457 U.S. at 816.  Thus, in order to "permit the resolution of insubstantial claims on summary judgment," the subjective prong was dropped.

Under Harlow, public officials are protected from liability under § 1983 by qualified immunity where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818. Public officials cannot simply say they did not know the law, or that they were not aware that the law existed to avoid liability.  Public officials are expected to be aware of the state of the law governing their conduct.  See Long v. Norris, 929 F.2d 1111, 1115 (6th Cir. 1991) *abrogated on other grounds as recognized in* Virgili v. Gilbert, 272 F.3d 391, 395 (6th Cir. 2001); see, also, Wentz v. Klecker, 721 F.2d 244 (8th Cir. 1983).

Defendant also argues that he was merely applying existing regulations. However, as found by this court previously, "[d]efendant's April 30, 2001 memorandum states that the policy, in general, indicated that 'offenders will be restrained and dressed in orange jumpsuit and transport shoes.'  Even assuming this is an accurate representation of the policy, nothing in the policy prohibits the inmate from also wearing a head covering or undergarment during transportation." ORDER ON PENDING MOTIONS, Docket #76, p. 7.  The pertinent portion of AR #300-37RD, the regulation concerning clothing to be worn by inmates during transport, states:

> Ensure offenders medium custody and above are transported in orange jumpsuits and transport shoes when being transported to non-secure area, i.e. hospital, court, etc.  Medium custody offenders that are permanently assigned to a facility may be transported in greens.

SUBMISSION OF EXHIBIT E TO MEMORANDUM BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, Docket #118.

The version of AR #800-01, the regulation concerning religious programs and practices, in force as of January 15, 2001, refers to the CDOC Faith Group Handbook (attachment E to the regulation) for standards by which legitimate faith group beliefs and practices can be performed within a correctional setting. See Docket #100, Exh. B, p. 5. The Handbook indicates that "religious items may be worn, used, and stored in accordance with Administrative regulation 800-1." Id. at Exh. B, attch E, p. 72. The regulation provided that "[p]ersonal faith group items shall be worn or used in the offenders cell, or while in corporate gatherings, and *shall not* be worn or used in general population, or while transporting to, or from corporate gatherings areas." Id. at Exh. B, p. 6, Sec. IV(F)(13) (emphasis in original). No prohibition is made with regard to the wearing of such personal faith group items while being transported to non-secure area, i.e. hospital, court, etc.

A memorandum, dated March 1, 2001, signed by Lee Hendrix and containing the notation "Please Issue to All Staff," appears to summarize the applicable regulations at that date and states protocols with respect to both head coverings and "tallit katan." See COMPLAINT, Docket #3, attch'd Faith Practices of: Jewish Offenders. The memorandum states that head covering may be worn in the cell or at service only, while a standard prison ball cap may be worn in the general population, however, it also states: "Under garment with fringes. May be worn at all times." Id. at p. 2. As the court previously found, "[t]his could indicate that even during transport outside the prison, at least a standard ball cap (in place of the yarmulke) and specifically the 'tallit katan,' may be worn." ORDER ON PENDING MOTIONS, Docket #76, p. 7.

Defendant posits that "[c]onstruing [the] regulations together, it was apparent that inmates were not allowed to wear religious items while being transported out of FCF." Docket #100, Exh. C. Nothing more than this conclusory statement is offered in support of this proposition. Based upon the regulations supplied to the court in this

11

regard, and as demonstrated by the court's previous findings, a question of fact clearly exists as to whether it was objectively reasonable for the defendant to restrict the plaintiff's practice of religion by refusing to transport him for medical treatment while he was wearing his religious garments.

Defendant attests that he does not recall reviewing Lee Hendrix's March 1, 2001, memorandum. See Docket #100, Exh. C. However, while whether or not defendant reviewed the memorandum is a factor which can be considered, it – alone – is not dispositive of the inquiry. The ultimate question is whether defendant's conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. See Anderson v. Creighton, 483 U.S. 635, 641 (1987) (the relevant question is the objective question of whether a reasonable officer could have believed his or her actions were lawful, in light of clearly established law and the information the officer possessed). Based upon the record before the court, there exists a genuine issue of material fact in this regard, and therefore, defendant's request for judgment as a matter of law on the issue of qualified immunity as raised in the Motion For Summary Judgment should be denied.

### E.   Damages.

Defendant argues that plaintiff failed to request either nominal or punitive damages in his pleadings, and therefore, he is precluded from recovering the same. With regard to punitive damages, the defendant also argues that the facts of the case, even as alleged by the plaintiff, fail to rise to the level that would warrant punitive damages.

Plaintiff has responded by indicating that he gave notice to the defendant of an intention to argue the issues of liability and damages separately and, under his tendered briefing in support of damage award, appears to be seeking declaratory and equitable relief in addition to nominal or punitive damages. This court has previously

12

declared that "plaintiff's claim for recovery of damages is limited to nominal damages and punitive damages in accordance with the provisions of 42 U.S.C. § 1997e(e)." Plaintiff has presented no evidence or well-pled facts to disturb this ruling, and therefore, his arguments concerning relief outside of nominal and punitive damages are moot and shall be disregarded.   Plaintiff's arguments concerning nominal and punitive damages will be duly considered in response to the defendant's Motion For Summary Judgment on the issue of damages.

While it is undisputed that the plaintiff has not specifically requested either nominal or punitive damages in his pleadings, the Tenth Circuit has opined that "the rule seems to be that an award of nominal damages is mandatory upon a finding of a constitutional violation." Searles v. Van Bebber, 251 F.3d 869, 879 (10th Cir. 2001). Accordingly, either broadly construing the plaintiff's assertion that "damage to rights, is irreparable," as set forth in his Amended Complaint as a request for nominal damages, or allowing the plaintiff to amend his pleading to specifically request nominal damages[1] would be appropriate.

The matter of punitive damages, however, cannot be as quickly remedied. Punitive damages are available in § 1983 actions. Smith v. Wade, 461 U.S. 30, 35 (1983) (citing Carlson v. Green, 446 U.S. 14, 22 (1980)).  However, punitive damages are to be awarded only when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith, 461 U.S. at 56.  The focus must be on whether the defendant's actions call for "deterrence and punishment over and above that provided by compensatory awards." Id. at 54.

Plaintiff has not demonstrated any well-pled facts or facts from which it can be

---

[1]In Colorado, as a matter of law, nominal damages are one dollar. Colo. Inv. Servs., Inc. v. Hager, 685 P.2d 1371, 1375 (Colo.Ct.App. 1984).

inferred, or evidence in response to defendant's motion, to show that the defendant either acted with malice or knew his actions were unconstitutional.  The fact that the defendant's actions may have been objectively unconstitutional is not considered when determining whether to award punitive damages.  "[A]n award of punitive damages requires an assessment of [the defendant's] subjective state of mind."  Wulf v. City of Wichita, 883 F.2d 842, 867 (10th Cir. 1989).

Defendant attests that he advised CDOC executive staff of the issue in this regard and asked whether an amendment to the regulations was appropriate.  He also attests that he attended meetings with respect to the issue, which ultimately resulted in amendments to the regulation to allow Jewish offenders to wear their religious items when being transported.  See Docket #100, Exh. C.  In response, plaintiff has supplied no evidence or well-pled facts to the contrary.  "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).

Essentially, the inquiry under summary judgment is "whether the evidence presents a sufficient disagreement to require submission to the [fact finder] or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.  Based on the record herein, even if the fact finder in this case were to completely accept plaintiff's version of the facts, it could not reasonably find that the defendant acted with evil motive or callous disregard of plaintiff's First Amendment rights.

Plaintiff may argue that he should be allowed time and opportunity to amend his lawsuit in this regard to specifically plead punitive damages and "flesh out" allegations to support such damages.  While leave to amend "shall be freely given when justice so requires," FED.R.CIV.P. 15(a), refusing leave to amend is justified if amendment would

14

cause undue delay or undue prejudice to the opposing party, be offered in bad faith or under a dilatory motive, fail to cure deficiencies by amendments previously allowed, or be futile, Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993).

Courts may deny leave if the movant "'knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint.'" Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994) (quoting State Distributors, Inc. v. Glenmore Distilleries, 738 F.2d 405, 416 (10th Cir. 1984) (citations omitted)).

Based on the record before the court, granting leave to the plaintiff to amend his Amended Complaint in this manner would be untimely, that plaintiff did not diligently pursue the basis of such amendments, and that the facts behind such amendments would have been known to the plaintiff at the initiation of this action.  Additionally, following the filing of a dispositive motion which challenges a plaintiff's allegations, the court must be cautious in considering additional facts or legal theories especially when the plaintiff is on notice that the allegations in the complaint were in some way deficient.  See, generally, Hayes v. Whitman, 264 F.3d 1017, 1025-26 (10th Cir. 2001).

Finally, plaintiff has proceeded in this court on one set of facts and theory of liability instead of any other of which the plaintiff would have known, amounting to a choice made by the plaintiff, not excusable neglect.  Therefore, refusing the plaintiff an opportunity to amend his pleadings with regard to punitive damages would be justified.

Accordingly, based on the record herein, defendant's request for summary judgment on the issue of nominal damages should be denied, but his request for judgment as a matter of law on the issue of punitive damages should be granted.

**F.    Conclusion.**

Review and analysis of the defendant's Motion For Summary Judgment indicates that no issue of genuine material fact exists with regard to plaintiff's claim under

15

RLUIPA, and therefore, judgment as a matter of law is appropriate in favor of the defendant.  With regard to plaintiff's claim of a First Amendment violation, however, the claim is not barred by the applicable statute of limitations and the defendant is not entitled to qualified immunity under the arguments he has raised in his current motion. Therefore, that portion of Claim Two of plaintiff's Amended Complaint which alleges a violation of his First Amendment rights arising out of the denial of transport to the plaintiff for medical treatment while wearing his religious garments should proceed forward.  However, there is a complete lack of evidence in the record upon which a jury could reasonably find for the plaintiff in connection with the award of punitive damages. This fact, when coupled with the court's previous ruling, limits the plaintiff's claim for recovery of damages in this matter solely to nominal damages.

## II.    Defendant's Motion To Dismiss.

Concomitantly with his Motion For Summary Judgment, the defendant has filed a Motion To Dismiss plaintiff's RLUIPA claim.  In the Motion To Dismiss, the defendant challenges the constitutionality of RLUIPA, arguing that it (1) violates the Establishment Clause of the First Amendment; (2) violates the Separation of Powers doctrine; (3) exceeds Congress' enumerated powers under the Spending and Commerce Clauses; and (4) impinges on State sovereignty in violation of the Tenth Amendment. The defendants present a facial challenge to RLUIPA.

Analysis under defendant's Motion For Summary Judgment, as set forth in the preceding section of this Recommendation, would indicate that plaintiff's RLUIPA claim should be dismissed.  Therefore, consideration of the defendant's challenge to the constitutionality of RLUIPA is unnecessary.  See Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346-47 (1936) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."); Slack v. McDaniel, 529 U.S. 437,

16

485 (2000) (quoting and reaffirming Ashwander rule).  However, because the determination for dismissal has been made by Recommendation, and therefore subject to *de novo* determination upon specific objection, I will review and consider the defendant's Motion To Dismiss.

When considering a facial challenge to a federal statute, the court "must start with the venerable rule of statutory construction that a statute is presumed to be constitutional unless shown otherwise."  Branson School Dist. RE-82 v. Romer, 161 F.3d 619, 636 (10th Cir. 1998) (citing Romer v. Evans, 517 U.S. 620, 643 (1996)).  "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."  United States v. Salerno, 481 U.S. 739, 745 (1987).

RLUIPA was signed into law on September 22, 2000.  Pub. L. No. 106-274, 114 Stat. 803-807.  The statute was enacted to "protect religious liberty" with regard to state and local land use regulations and institutionalized persons in the custody of states and localities.  Id.  Only section 3, which addresses institutionalized persons, is at issue here.  Section 3 of RLUIPA provides:

> (a) General rule
>
> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.
>
> (b) Scope of application
>
> This section applies in any case in which--

> (1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or
>
> (2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes.

42 U.S.C. 2000cc-1.

The defendant asserts that section 3 of RLUIPA violates the Establishment Clause. After the defendant filed his motion, the United States Supreme Court declared that RLUIPA does not violate the Establishment Clause. Cutter v. Wilkinson, 125 S.Ct. 2113 (2005). Accordingly, defendant's motion should be denied insofar as it seeks dismissal of the plaintiff's RLUIPA claim on the basis that it violates the Establishment Clause.

The defendant further asserts that section 3 of RLUIPA violates the Separation of Powers doctrine; exceeds Congress' enumerated powers under the Spending and Commerce Clauses; and impinges on State sovereignty in violation of the Tenth Amendment. These arguments have not been addressed by the Supreme Court or the Tenth Circuit Court of Appeals. Other circuit courts, however, have uniformly denied these constitutional challenges to RLUIPA. Benning v. Georgia, 391 F.3d 1299, 1305-1309 (11th Cir. 2004) (holding that RLUIPA is a valid exercise of Congress' spending power and does not violate the Tenth Amendment); Charles v. Verhagen, 348 F.3d 601 (7th Cir. 2003) (rejecting Tenth Amendment and Spending Clause challenges); Mayweathers v. Newland, 314 F.3d 1062 (9th Cir. 2002) (rejecting Spending Clause, Tenth Amendment, and Separation of Powers challenges).

The defendant reiterates the same arguments considered and rejected by these courts, and presents nothing factually or legally novel or unique to distinguish his challenge to the Constitutionality of RLUIPA from those already made. I find persuasive the reasoning of the courts that have rejected challenges substantially identical to the defendant's challenges here. Accordingly, defendant's motion should

be denied insofar as it seeks dismissal of the plaintiff's RLUIPA claim on the basis that it violates the Separation of Powers doctrine; exceeds Congress' enumerated powers under the Spending and Commerce Clauses; and impinges on State sovereignty in violation of the Tenth Amendment.

Based upon the Supreme Court's ruling in <u>Cutter</u> and the on-point and well-reasoned decisions found in other circuits on the issues presented, defendant's challenges to the constitutionality of RLUIPA should be rejected and his motion denied.

## CONCLUSION

Based on the foregoing, and the entire record herein, it is hereby

**RECOMMENDED** as follows:

1.   Defendant's Motion For Summary Judgment [Filed February 9, 2005; Docket #99] be **GRANTED** in part and **DENIED** in part, resulting in:

    a.   Dismissal, with prejudice, of plaintiff's claim under RLUIPA contained at Claim Two of plaintiff's Amended Complaint.

    b.   Retention for prosecution by plaintiff of his claim of a First Amendment violation contained at Claim Two of plaintiff's Amended Complaint, but with recovery of damages for this claim limited solely to nominal damages.

2.   Defendant's Motion To Dismiss [Filed February 9, 2005; Docket #103] be **DENIED**.

3.   Plaintiff's Motion To Uphold Plaintiff's Religious Land Use And Institutionalized Persons Claim [Filed April 13, 2005; Docket #126] be **DENIED**.

Further, it is hereby **ORDERED** as follows:

1.   Plaintiff's Motion To Submit Argument In Support Of Damage Award [Filed April 13, 2005; Docket #125] is **GRANTED**. Plaintiff's Brief In Support Of Judgment And Award For Damages, tendered to the court on April 13, 2005, shall be accepted for filing. However, plaintiff's arguments concerning relief outside of nominal and punitive damages are moot and shall be disregarded, while arguments concerning nominal and punitive damages were duly considered in response to the defendant's Motion For Summary Judgment on the issue of damages.

19

2.      Plaintiff's Motion For Extension Of Time [Filed May 26, 2005; Docket #142] is **GRANTED** *nunc pro tunc.*

Dated at Denver, Colorado this 28th day of September, 2005

BY THE COURT:

s/ O. Edward Schlatter

_____
O. Edward Schlatter
United States Magistrate Judge

**ADVISEMENT UNDER FED. R. CIV. P. 72**

Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  FED. R. CIV. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court.  Thomas v. Arn, 474 U.S. 140, 155 (1985); Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991); Niehaus v. Kansas Bar Ass'n, 793 F.2d 1159, 1164 (10th Cir. 1986).

21