IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Case No. 03-cv-00557-PSF-OES

RUSSELL M. BOLES,

    Plaintiff,

v.

GARY D. NEET,

    Defendant.

---

**ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE ENTERED ON SEPTEMBER 28, 2005**

---

This matter comes before the Court pursuant to the Recommendation of Magistrate Judge Schlatter entered on September 28, 2005 (Dkt. # 160). In his Recommendation, the Magistrate Judge recommends granting in part and denying in part Defendant Neet's Motion for Summary Judgment (Dkt. # 99), filed on February 9, 2005. The Magistrate Judge also recommends denying the Motion to Dismiss (Dkt. # 103) filed by Defendant Neet on February 9, 2005 and plaintiff's Motion to Uphold Plaintiff's Religious Land Use and Institutionalized Persons Act ("RLUIPA") Claim (Dkt. # 126) filed April 13, 2005. The Magistrate Judge also entered an order accepting for filing Plaintiff's Motion to Submit Argument in Support of Damage Award (Dkt. # 125) filed April 13, 2005, but found such claims mooted by a prior order of this Court.

Defendant Neet filed his Objection to the Recommendation of the Magistrate Judge on October 24, 2005 pursuant to an extension of the filing deadline. Plaintiff Boles filed his Objection to the Recommendation of the Magistrate Judge on November

16, 2005 pursuant to an extension of the filing deadline. The matter is now ripe for determination by this Court.

**PLAINTIFF'S CLAIMS**

The underlying facts that give rise to plaintiff's filing of this case under 42 U.S.C. § 1983 are adequately detailed in the Recommendation of the Magistrate Judge, as well as the undersigned's prior Order of August 20, 2004, which granted in part and denied in part Defendant Neet's Motion to Dismiss, and need not be detailed here. Suffice it to say that plaintiff is an inmate at the Fremont Correctional Facility ("FCF"), which is operated by the Colorado Department of Corrections ("CDOC"). At the time of the events in question, Defendant Neet was the warden of the facility.

The essence of plaintiff's claim relates to occasions, including one that apparently occurred in March 2001, when plaintiff, who alleges he is an Orthodox Jew, was not allowed to wear the religious garments he states are required to be worn by Orthodox Jews while he was being transported outside FCF for medical treatment or eye surgery.[1] As a result of the denial, plaintiff was not transported and the surgery was postponed for 18 months, or until December 2002, according to plaintiff's complaint.

---

[1] Plaintiff claims he was denied transport because he insisted on wearing his "*yarmulke*" (a yiddish word referring to a skull cap or head covering) and "*tallit katan*" (a hebrew expression referring to an undergarment bearing fringes, or "*tzitzit*"), worn by some of the Jewish faith to fulfill the commandment appearing in the Bible at the book of Numbers, ch. 15, verse 37 "make for themselves '*tzitzit*' fringes on the corners of their garments throughout the ages."). Plaintiff alleges that the *Kitzer Shulchan Arukh*, (a code of Jewish law) provides that a Jewish male is forbidden to walk a distance of four cubits (between 12 and 16 feet) with his head uncovered or not wearing *"tzitzit"* during daylight hours.

Plaintiff's Amended Complaint, filed November 3, 2003, alleged four causes of action. However, after this Court's Order of August 20, 2004 only plaintiff's second cause of action remained. Plaintiff alleges in that claim that the actions of Defendant Neet deprived him of his rights to free exercise of religion as guaranteed by the First and Fourteenth Amendments to the Constitution and constitute violations of RLIUPA, 42 U.S.C. § 2000cc, *et seq*.

**DEFENDANT'S MOTIONS**

Defendant Neet now seeks summary judgment in his favor on the First Amendment claim and the claim under the RLUIPA. Defendant Neet asserts that the First Amendment claim is barred, as a matter of law, by the applicable two-year statute of limitations and by the application to him of the doctrine of qualified immunity. He further contends that plaintiff's claims for damages fail. He also argues that the RLUIPA claim is barred because plaintiff has not alleged that the Fremont Correctional Facility receives federal assistance, and in any event the facility changed its policy regarding transport of prisoners while wearing religious garb, so as to insulate the defendant from liability under 42 U.S.C. § 2000cc-3(e).

Defendant Neet separately moves to dismiss the claims under the RLUIPA on the grounds that the statute is unconstitutional. As a result of this latter motion, the United States was permitted to intervene to argue the constitutionality of the RLUIPA.

**ANALYSIS OF RECOMMENDATION OF MAGISTRATE JUDGE**

    **A.    Defendant's Motion for Summary Judgment (Dkt. # 99)**.

        1.  <u>The RLUIPA Claim</u>

The Magistrate Judge recommends granting defendant's motion for summary judgment on the RLUIPA claim on the ground that the CDOC changed its policy to allow Jewish inmates to wear their *yarmulkes* and *talit katan* during transport, citing to Exhibit G to Defendant's Motion, a CDOC administrative regulation adopted November 15, 2001 (Recommendation at 6). That regulation, as amended, expressly provides that Jewish offenders may wear the *yarmulke* and *talit katan* while being transported. The Court agrees with the recommendation of the Magistrate Judge that plaintiff's claim under the RLUIPA should be dismissed, but finds that some further elaboration is necessary.

As the Magistrate Judge correctly describes this statute, it contains a "substantial burden provision" requiring land use regulations that substantially burden religious exercise to be the least restrictive means of advancing any compelling government interest. 42 U.S.C. § 2000cc(a)(1). The substantial burden restriction is imposed on any program or activity that receives federal financial assistance, even if the burden results from a rule of general applicability. 42 U.S.C. § 2000cc(a)(2)(A). The statute also contains a nondiscrimination provision, which prohibits imposition or implementation of land use regulations in a manner that discriminates against any assembly or institution on the basis of religion or religious denomination. 42 U.S.C.

§ 2000cc(b)(2). A separate provision of the RLUIPA expressly extends these same protections to persons residing or confined in an institution. 42 U.S.C. § 2000cc-1(a).

Plaintiff's Amended Complaint does not expressly state which provision of RLUIPA has allegedly been violated. However, these statutory provisions have been found applicable to preclude summary judgment on claims of discriminatory religious treatment by inmates in state prisons. *See e.g. Mayweathers v. Newland*, 314 F.3d 1062, 1068-69 (9th Cir. 2002), *cert. denied*, 540 U.S. 815 (2003); *Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 987-88 (8th Cir.), *cert. denied* 125 S. Ct. 501 (2004).

The statute also provides that a person may assert a violation of the statute "in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). The Court understands this provision to permit cases against a governmental entity, but not against an individual officer, except perhaps in his or her official capacity. *Cf. Hale O Kaula Church v. Maui Planning Com'n.*, 229 F. Supp. 2d 1056, 1067 (D. Haw. 2002) ("RLUIPA provides a cause of action against 'governments' and does not appear to allow causes of action against individuals."); *Guru Nanak Sikh Society of Yuba City v. Sutter*, 326 F. Supp. 2d 1128, 1136 (E.D. Cal. 2003) (finding that the term "government" includes an official of the entity, and therefore permits suit against the official at least in his or her official capacity); *Rowe v. Davis*, 373 F. Supp. 2d 822, 828 (N.D. Ind. 2005) (RLUIPA claim may proceed against correctional officer or his successor on an official capacity basis). Here, it is not at all clear from plaintiff's

complaint that Defendant Neet is being sued in his "official capacity" with respect to the RLUIPA claims.[2]

Moreover, while the statute permits "appropriate relief against a government" it does not appear that the statute permits a claim for damages. *See e.g. Farrow v. Stanley*, 2005 WL 2671541 at *11 n.13 (D.N.H., October 20, 2005) ("RLUIPA authorizes 'appropriate relief against a government.' . . . There is substantial uncertainty, however, as to whether this language even provides a right to money damages.").[3] It would appear, therefore, that the "appropriate relief" permitted under the statute must be limited to injunctive or declaratory relief, or both, against a state governmental entity or an official sued in his official capacity. Thus, to the extent plaintiff here seeks compensatory damages under RLUIPA, his claims are barred.

Finally, because the statute appears to allow only injunctive or declaratory relief, it contains the provision, cited by the Magistrate Judge, which may alleviate the need for such equitable relief if the government entity takes corrective action. 42 U.S.C. § 2000cc-3(e) provides that:

> A government may avoid the preemptive force of any provision of this chapter by changing the policy or practice that results in a substantial burden on religious exercise, by retaining the policy or practice and exempting the substantially burdened religious exercise, by providing

---

[2] The Amended Complaint states "[t]he defendant committed the act(s) complained of (under color of law) as an official of the state (warden), but in his own individual capacity because the state does not authorize civil rights violations." Amended Complaint at 2.

[3] The Court has found one unreported recommendation of a Magistrate Judge suggesting that damages may be available against individual defendants under RLUIPA. *See Orafen v. Goord,* 2003 WL 21972735 at *9 (N.D.N.Y. 2003, Treece, Magistrate J.).

6

>        exemptions from the policy or practice for applications that
>        substantially burden religious exercise, or by any other
>        means that eliminates the substantial burden.

42 U.S.C. § 2000cc-3(e).  This provision has been interpreted to provide discretion in the government agency to take corrective action to eliminate any violation of the statutory provisions, whether or not the alleged violation was the result of a substantial burden on religious exercise, and thereby preempt liability under RLUIPA.  *See Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 762 (7th Cir. 2003), *cert. denied* 541 U.S. 1096 (2004).

Here, there can be no serious factual dispute that the CDOC took action to change any prison policy or practice that may have infringed plaintiff's asserted rights of religious practice at times of transport outside the prison.  Although the taking of the action may have been delayed, as plaintiff argues in his Objection to the Court, that action nonetheless moots plaintiff's claims under RLUIPA.  The fact that plaintiff may have alleged that he suffered damages during the period while the practice or policy remained in effect is not pertinent, for the reasons stated above.

Accordingly, for all the reasons set forth above, summary judgment must enter for defendant as to plaintiff's claim for relief under the RLUIPA.   Plaintiff's Motion to Uphold RLUIPA Claim (Dkt. # 126) is DENIED.

### 2. The First Amendment Claims

The Magistrate Judge recommends denial of the motion for summary judgment as to plaintiff's First Amendment claims to the extent it argues that the claims are barred by the two-year statute of limitations.  Defendant Neet advanced the same

argument in his earlier motion to dismiss. This Court denied that motion finding that plaintiff appears to allege violations of his First Amendment rights during the two-year period preceding his filing of the original complaint on March 11, 2003 (Order of August 20, 2004 at 8-9). In his Objection to this Court, plaintiff makes additional arguments suggesting that the policy was applied to him during the period until it was changed (Plaintiff's Objection at 3-4).

Defendant Neet offered no new arguments or demonstrated any undisputed facts in his Motion for Summary Judgment that would cause the Court to reverse its earlier ruling. In his Objection to the Recommendation of the Magistrate Judge Defendant Neet does not raise this issue, stating that he objects to the Recommendation only to the extent it denied qualified immunity (Defendant's Objection at 2). Accordingly the Recommendation of the Magistrate Judge is accepted as to the statute of limitations argument.

The Magistrate Judge also recommends denying Defendant Neet's motion on the basis of the assertion of qualified immunity. As indicated, Defendant Neet vigorously objects to this ruling. He essentially argues that qualified immunity should attach here because his conduct did not violate a "clearly established" constitutional right, as required in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Defendant Neet argues that at the time of the incident in question, there was no clearly established constitutional right with respect to an inmate's right to wear religious items during transport, or at any time for that matter (Defendant's Objection at 9).

Defendant Neet made essentially the same argument in his earlier motion to dismiss, and in his Objection to the Magistrate Judge's Recommendation with respect to that motion, citing the same cases he cites in his current Objection. This Court rejected the argument then, stating:

> While a defendant charged with a constitutional violation receives qualified immunity when the right asserted is not clearly established, the right that has been established does not have to so fact specific that it is identical to what is alleged in the case at issue, as defendant appears to argue here. To overcome a motion to dismiss the plaintiff must articulate a constitutional right which the defendant violated. To unreasonably limit plaintiff's free exercise of religion is a violation. The limitation of that right does not have to completely prevent a plaintiff from exercising his religious rights. As the Tenth Circuit stated in *Makin, supra*, "[a] complete denial of the ability to observe a religious practice is not required to demonstrate an infringement" of a prisoner's right to free exercise. 183 F.3d at 1213.

Order of August 20, 2004 at 6.

Defendant Neet also suggests, as he did in his Motion to Dismiss, that the prison has a security interest in what prisoners wear during transport so as to avoid weapon concealment (Defendant's Objection at 9). Yet Defendant Neet has again offered no evidence to support the suggestion that security is somehow compromised by the wearing of a *yarmulke* or *tallit katan* during transport.

In his present Objection, and in support of his Motion for Summary Judgment, Defendant Neet also argues that even if the constitutional right were clearly established, his conduct under the circumstances was objectively reasonable (Defendant's Objection at 10-15). He claims that he was merely "interpreting and

applying" CDOC regulations that were applicable to the transport situation (Objection at 15).

Defendant Neet may be correct, and a fact finder after a full trial may agree that what he did was reasonable. But on the record before it, this Court cannot say that a fact finder would be unreasonable in reaching the opposite conclusion for the following reasons:

In his Objection to this Court, and in his affidavit in support of his Motion for Summary Judgment, Defendant Neet acknowledges that the "policy in effect in March 2001 regarding religious items is found at AR 800-01." (Defendant's Objection at 3; Neet Affidavit, Exhibit C to Motion for Summary Judgment at ¶ 7). He further acknowledges that "[a]n attachment to this regulation stated the Jewish offenders could wear Tallit Katan at all times." (Neet Affidavit at ¶ 7). That attachment is found at page 72 of "Attachment E" which is attached to the copy or AR 800-01, filed as Exhibit B to Neet's Motion for Summary Judgment. Similar language is found in a memorandum dated March 1, 2001, authored by prison official Lee Hendrix, Volunteer Services Administrator for the CDOC. A copy of the Hendrix memorandum is attached to plaintiff's original complaint.

Neet argues that the attachment permitting the wearing of *tallit katan* "at all times" only applied "while inmates were inside of a CDOC facility, it did not change the transport regulations promulgated at AR 300-37." (Defendant's Objection at 3-4; Neet Affidavit, *supra* at ¶ 7; Hendrix Affidavit, Exhibit D to Motion for Summary Judgment, at ¶ 7). Neet concludes his description of the regulations by pointing out that AR 300-37,

the specific policy in effect in March 2001 concerning transportation of inmates, provided that inmates were to "be restrained and dressed in orange jumpsuits and transport shoes." (Objection at 4 citing to AR 300-37, attached as sealed Exhibit E to Motion for Summary Judgment).

The Court has carefully reviewed the regulation regarding transportation of inmates cited by Defendant Neet and agrees that his report of the regulation language is accurate. But Defendant Neet's argument makes the following leap, stating that "[n]o other items were allowed during transport out of FCF." (Objection at 4; Neet Affidavit at ¶ 8). Based on this understanding, Neet avers that he concluded that "inmates were not allowed to wear religious items while being transported out of FCF." (Neet Affidavit at ¶ 9).

As noted, Defendant Neet has now provided the Court with a copy of AR 300-37, which was not appended to his motion to dismiss. Because the CDOC considers the document to contain sensitive security information, it filed the document with the Court under seal and did not provide a copy to plaintiff (Defendant's Motion at 5, n. 2). Respecting the asserted sensitive nature of the document, the Court will not recite its contents in detail. However, as noted above, the Court has reviewed the entire document.

It is apparent to the Court that the purpose of the document as a whole is to implement measures providing security in connection with the transport of prisoners outside the institution. The Court can readily understand that the requirement of wearing orange jumpsuits and transport shoes furthers the security interests of the

11

CDOC with respect to identifying any inmate who may escape during transport, and in hindering any inmate's ability to hide or flee. However, the Court finds nothing in the regulation that supports Defendant Neet's statement that inmates are not allowed to wear any other items during transport. As the Court stated in its Order of August 20, 2004, even before seeing the actual policy, and as supplemented by the updated record now before it, nothing in the policy prohibits the inmate from also wearing a head covering, such as a *yarmulke*, or an undergarment, such as a *tallit katan.* If there is a security issue associated with such garments, it is not apparent from the regulations.

Accordingly, at this stage of the case, this Court cannot say as a matter of law that Defendant Neet's determination to prohibit the wearing of such items during transport was a reasonable restriction on plaintiff's free exercise of his religious practices, consistent with prison security needs, such that he is entitled to be clothed with qualified immunity. The recommendation of the Magistrate Judge on this point must be accepted and summary judgment denied as to plaintiff's First Amendment claim.

### 3. Plaintiff's Claim for Damages

Plaintiff's original complaint filed April 1, 2003, sought only injunctive relief as of that time, but indicating that "[a]fter the necessary procedures are complete, the plaintiff will ask the court to afford compensation for actual damages and costs." (Complaint at 8). Defendant Neet filed his motion to dismiss on September 18, 2003.

On November 3, 2003, while that motion was pending, plaintiff filed a motion for leave to file an amended complaint, along with a tendered Amended Complaint (Dkt. # 40).

The proposed Amended Complaint contained additional claims for relief, and also appeared to amend the prayer for relief to include a claim for damages from a physical injury to plaintiff's vision. In describing plaintiff's alleged injury, the revised prayer for relief states: "Damage to rights, is irreparable. Permanent damage is estimated by the plaintiff at 25 to 33% of normal; 10 % loss @ distance, 5% loss @ mid-range, 80 to 90% loss @ close range. Right was weakened from extra strain." (Proposed Amended Complaint at 8). In opposing plaintiff's motion for leave to amend the complaint, Defendant Neet argued "Plaintiff's claim for damages is barred by the Prison Litigation Reform Act, 42 U.S.C. § 1997e (e)." (Defendant's Response to Plaintiff's Motion to Amend Complaint at ¶ 5).

The motion for leave to file the amended complaint was not ruled on until the Magistrate Judge issued his Recommendation of July 12, 2004, which addressed both Defendant Neet's Motion to Dismiss and plaintiff's Motion for Leave to File the Amended Complaint. That Recommendation suggested dismissal of some of the claims in plaintiff's original complaint, and only allowed the Amended Complaint to the extent it contained the above-described claims under RLUIPA and the First Amendment (*see* Recommendation at 31).

The Recommendation, however, also addressed Defendnat Neet's argument on damages. The Recommendation stated that "while a claim for compensatory damages in this regard is barred in the absence of any showing of physical injury, a claim for

either punitive or nominal damages is not similarly barred." (Recommendation at 29). The Magistrate Judge concluded that since "[n]either the Complaint or Amended Complaint [is] clear as to the damages plaintiff seeks in this regard," dismissal is warranted only as to the compensatory damages (*id.*). Although plaintiff did raise an objection to the Recommendation to dismiss his claim for mental distress damages (*see* Plaintiff's Objection, dated August 17, 2004 at 10), in its Order of August 20, 2004, this Court, without any discussion or analysis, accepted the recommendation of the Magistrate Judge on this point, stating in the "Conclusion" section of its Order that plaintiff's claim of recovery is "limited to nominal and punitive damages." Order at 9.

In his Motion for Summary Judgment, Defendant Neet now seeks summary judgment as to plaintiff's claim for nominal damages on the grounds that they are not specifically requested in the Amended Complaint (Defendant's Motion at 16) and as to his claim for punitive damages on the grounds that they are neither requested in the Amended Complaint nor is there any evidence of evil motive or intent, or reckless or callous indifference to federally protected rights, so as to support an award of punitive damages (Defendant's Motion at 16).

In response to the defendant's motion, plaintiff filed a request to deny summary judgment on April 4, 2005 (Dkt. # 120), to which he attached his affidavit dated March 30, 2005 (Dkt. # 121), and a separate brief in support of his claim for damages, filed April 13, 2005 (Dkt. # 125). Although asserting that Defendant Neet acted with reckless disregard for plaintiff's rights, none of these filings offer factual matters to support the conclusion. At most, they assert that the staff operating under Defendant

Neet took actions that may be construed as interfering with his religious rights such as trying to force him not to wear the *tallit katan* or harassing him for doing so (Plaintiff's April 4, 2005 Opposition at 11; Plaintiff's Affidavit at ¶ 15).  However, none of the filings support a finding that Defendant Neet himself, as opposed to his staff, acted with an evil motive or callous disregard of plaintiff's rights.  The Court, therefore, agrees with the Recommendation of the Magistrate Judge that plaintiff has not come forward with sufficient evidence to overcome Defendant's Neet's motion for summary judgment on the issue of punitive damages.

Conversely, although plaintiff did not expressly request nominal damages in his Amended Complaint, the Court agrees with the Magistrate Judge that nominal damages are at least mandatory on a filing of a constitutional violation.  *Smith v. Van Bebber*, 251 F.3d 869, 879 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002).  Defendant's motion for summary judgment as to this issue must be denied.

Called upon to more carefully review plaintiff's Amended Complaint as a result of Defendant Neet's motion on the damages issues, the Court now has overcome its earlier myopia, recognizing plaintiff has pled some physical injury resulting from the alleged constitutional violation.  Although at best inartful, and certainly far from clear, it appears that plaintiff alleged in the Amended Complaint that the delay in obtaining the eye surgery as a result of the transportation issue, caused damage to his vision. *See* p. 12, *supra*.  A physical injury such as this could suffice to support a claim for mental anguish or emotional distress under the requirements of 42 U.S.C. § 1997e(e).

Thus, the Court has reconsidered and decided to reverse in part its prior ruling of August 20, 2004, which accepted the recommendation of the Magistrate Judge that plaintiff's compensatory damages claim be dismissed.

First, the Amended Complaint, as noted above, does appear to allege physical injury resulting fro the alleged deprivation of constitutional rights. Second, in his current Objection to this Court, plaintiff amplifies upon his claimed damages, stating: "The actions the defendant took against the plaintiff resulted in irreparable damage (indignity) to the right to religious practice, by having necessary (even mandatory) mobility restricted unnecessarily and unjustifiably due to discrimination the plaintiff's religious practice. The severity of this damage was compounded by pain and suffering incurred from the obvious imminent need for and wrongful delay of prescribed medical treatment." (Objection at 4). Construing this somewhat awkward language most liberally to the plaintiff in recognition of the fact that he is appearing *pro se* in this case (*see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), the Court finds that the allegations suffice to allege the physical injury required under 42 U.S.C. § 1997e(e) so as to permit a claim for mental or emotional injury. Furthermore, in an affidavit of March 30, 2005, filed in response to Defendant Neet's motion for summary judgment, plaintiff states that "I now have 20/20 vision in that eye at a range of ten to twenty feet. Before and after that distance, not so good; but I can see." (Plaintiff's Affidavit at ¶ 14). Ths statement by plaintiff appears to at least implicitly reinforce his earlier pleading averring physical injury, albeit recognizing that this eyesight problems allegedly caused by a constitutional violation has improved.

Accordingly, the Court reverses its prior ruling on plaintiff's claim for compensatory damages for mental anguish and emotional distress and permit such damages to be sought by plaintiff in this case.  Of course, such ruling does not constitute a finding that any such damages were in fact incurred, that the alleged clothing restrictions here were the proximate cause of any such damages, or that defendant lacks viable defenses to such claimed damages.

### B.     Defendant's Motion to Dismiss (Dkt. # 103).

Defendant Neet first asserts that RLUIPA is unconstitutional because it violates the Establishment Clause of the First Amendment.  After Defendant Neet filed his motion, this argument was rejected by the Supreme Court in *Cutter v. Wilkinson,* 125 S.Ct. 2113 (2005).

Defendant Neet further argues that RLUIPA is unconstitutional because it violates the separation of powers doctrine, exceeds congressional power under the Spending and Commerce clauses, and infringes state sovereignty in violation of the Tenth Amendment.  These arguments, although raised, were expressly not reached in the *Cutter* case.  *See* 125 S.Ct at 2120 n.7.  However, as the Magistrate Judge correctly found, these arguments against the constitutionality RLUIPA have been raised, and rejected, in other federal circuits. Recommendation at 19.  This Court finds no reason advanced by Defendant Neet to vary from those rulings.

Defendant Neet's motion to dismiss is DENIED.

**CONCLUSION**

Defendant Neet's Motion for Summary Judgment (Dkt. # 99) is GRANTED in part and DENIED in part.

Defendant Neet's Motion to Dismiss (Dkt # 103 ) is DENIED.

Plaintiff's Motion to Uphold Plaintiff's RLUIPA Claim (Dkt. # 126 ) is DENIED.

Defendant Neet is directed to file an answer to plaintiff's Amended Complaint within ten days of this Order, together with an indication of whether he requests a jury trial.

This case is set for a three-day trial to commence on **April 10, 2006, at 9:00 a.m.**  A Final Trial Preparation Conference is set for **March 31, 2006, at 3:00 p.m.**  The parties are directed to promptly set a scheduling conference with the Magistrate Judge to determine whether any further scheduling, motion practice or discovery is necessary to prepare this case for trial.

The Court will direct the Clerk's Office to endeavor to find counsel to represent the plaintiff.

Dated: November 30, 2005

BY THE COURT:

*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge